UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREGORY SMITH,

                       Plaintiff,

           -against-

CITY OF NEW ROCHELLE, CITY OF
MOUNT VERNON, COUNTY OF
WESTCHESTER, OFFICER HOUSEN,
OFFICER RELVAS, OFFICER BOVELL,
OFFICER BAMTO, JOHN DOE #1, JOHN
DOE #2, JOHN DOE #3, JOHN DOE #4,
JOHN DOE #5, JOHN DOE #6, and JOHN
DOE #7,

                       Defendants.

24-CV-9899 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

One summer day when Gregory Smith was heading home from the hair salon, police officers stopped, surrounded, and ordered him out of the car at gunpoint. They then, according to Mr. Smith, baselessly detained him in the back of a police car and searched his car. Mr. Smith brings the present case, alleging violations of his constitutional rights, against the City of Mount Vernon and four police officers from the Mount Vernon Police Department ("MVPD")—Officers Housen, Relvas, Bovell, and Bamfo[1] ("Mount Vernon Officers" and, collectively, "Mount Vernon Defendants"); the County of Westchester, in which Mount Vernon is located, and John Does 1–4, four police officers from the Westchester County Police Department ("County Officers" and, collectively, "County Defendants"); and the City of New Rochelle and John Does

---

[1] The Mount Vernon Defendants clarify that the proper spelling for "Officer Bamto," as pled by the Second Amended Complaint, is "Bamfo." *See* ECF No. 56 at 1 n.1. As such, the Court uses the corrected spelling herein.

5–7, three police officers from the New Rochelle Police Department ("New Rochelle Officers" and, collectively, "New Rochelle Defendants").

Defendants move to dismiss this action in its entirety. For the reasons described below, the Court concludes that Plaintiff's false arrest and search claims survive against most of the Mount Vernon and Westchester County Defendants. Because the remaining claims lack required allegations or are based solely on conclusory allegations, the Court dismisses the remaining claims against Defendants. In light of the multiple opportunities Plaintiff has had to cure these deficiencies, the Court denies further leave to amend the complaint.

## BACKGROUND

The following facts, unless otherwise noted, are taken from the Second Amended Complaint (ECF No. 46, "SAC") and presumed to be true for the purposes of this Order. *See J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

On August 24, 2023, Mr. Smith was driving home from the hair salon when he stopped at a red light at the intersection of West 1st Street and South 11th Avenue in Mount Vernon, New York. ¶¶ 48–49. When the light turned green, police vehicles surrounded his car "from the front, back, and side." ¶ 50. They drew their firearms and ordered Mr. Smith to exit his car. ¶ 51. When Smith got out, hands raised, the Mount Vernon Officers and Westchester Officers handcuffed him and put him in the back of a Mount Vernon police car. ¶¶ 51, 53. Mount Vernon and Westchester Officers subsequently searched Mr. Smith's car and trunk, where they knocked over a tank of gasoline. ¶¶ 57–58. The gasoline spilled in the car and damaged a radio system. ¶ 58. Several minutes after the search ended, Officer Housen wrote Mr. Smith a ticket for his tinted windows and let him go. ¶ 60. In total, police detained Mr. Smith for approximately one hour. ¶ 61.

Mr. Smith received different explanations for his detention at various points. When he was initially put in the police car, the Mount Vernon officers told Mr. Smith "to wait while they figured out what he would be arrested for." ¶ 54. Shortly after, Officer Housen told Mr. Smith that New Rochelle Officers had issued an alert to look for and detain him because he fled a traffic stop earlier in the day. ¶ 55. Mr. Smith clarified at the scene that they had the wrong person, and he had not been involved in any such incident. ¶ 56. Later, after the car search concluded, Officer Housen told Mr. Smith that he was cleared by New Rochelle but would continue to be detained pursuant to an active warrant in Queens. ¶ 59. Plaintiff denies the existence of any of the mentioned warrants, *see* ¶¶ 52, 56, 59, and a representative from the New Rochelle Police Department told him that they had not issued any "be on the lookout" ("BOLO") alert for him. ¶ 63. Although inartfully pled, Plaintiff poses two alternate theories of the underlying events: In the first instance, "to justify an otherwise unlawful traffic stop," the Mount Vernon and County officers on the scene fabricated alerts and warrants from other police departments, ECF No. 65 ("Opp. to County MTD") at 7–8; or, in the alternative, New Rochelle Officers incorrectly issued a BOLO alert for an event that never happened, which caused Plaintiff's subsequent detention, *see* ECF No. 64 ("Opp. to MV MTD") at 9.

Through fifty causes of action, Mr. Smith brings six core claims against Defendants. Against all of the Defendants, he alleges false arrest in violation of New York state law, false arrest and illegal search in violation of the Fourth Amendment of the United States Constitution and 42 U.S.C. § 1983, and deprivation of property in violation of the Fifth Amendment, Fourteenth Amendment, and 42 U.S.C. § 1983. *See* ¶¶ 68–148, 160–192, 204–236, 248–280, 292–323, 335–367, 379–404. Against all but the New Rochelle Defendants, Plaintiff also alleges conspiracy to deprive Plaintiff of his rights under 42 U.S.C. § 1985 and neglecting to prevent

conspiracy to deprive Plaintiff of his rights under 42 U.S.C. § 1986. *See* ¶¶ 149–59, 193–203, 237–47, 281–91, 324–34, 368–78, 405–14.

Plaintiff originally filed this case in Westchester County Supreme Court on November 20, 2024. ECF No. 1 ¶ 1. On December 23, 2024, the New Rochelle Defendants properly removed it. *See id.* Plaintiff amended his pleadings in March 2025, *see* ECF No. 18, and then, on May 5, 2025, filed a Second Amended Complaint after Defendants filed their initial Motions to Dismiss, *see* ECF No. 46. Thereafter, all Defendants submitted new Motions to Dismiss. *See* ECF Nos. 54, 57, 59, 60. On January 8, 2025, counsel for the Mount Vernon Defendants filed a Suggestion of Death for Defendant Officer Bovell. ECF No. 9.

## LEGAL STANDARD

Below are the applicable legal standards for Federal Rule of Civil Procedure 12(b)(6), under which the instant motions are brought, and civil rights claims under 42 U.S.C. § 1983.

### I.    Motion to Dismiss Under Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and

4

common sense." *Id.* at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id.* at 679.

## II.    Civil Rights Claims Under 42 U.S.C. § 1983

Section 1983 provides a civil claim for damages against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). To establish individual liability under Section 1983, a plaintiff must demonstrate "the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).

**DISCUSSION**

The Court's discussion proceeds in eight parts. First, the Court analyzes *Monell* liability against the municipal entities, finding that Plaintiff fails to properly allege *Monell* liability against New Rochelle, Westchester County, and Mount Vernon. Then, it dismisses claims against Officer Bovell. Third, the Court dismisses all claims against the New Rochelle Defendants. Fourth, it assesses Plaintiff's claims for false arrest and unlawful search, concluding the remaining claims survive. Fifth, the Court finds that Plaintiff fails to state a claim for deprivation of property. Sixth, the Court finds the same for the conspiracy claims under Sections 1985 and 1986. Seventh, the Court determines that Plaintiff's claims for punitive damages cannot be sustained against the municipalities or Westchester County. And finally, the Court *sua sponte*

denies Plaintiff leave to amend the dismissed claims. Accordingly, the New Rochelle Defendants' Motion to Dismiss is granted in full, and the County Defendants' and New Vernon Defendants' Motions to Dismiss are granted in part and denied in part.

At the outset, the Court addresses seeming typographical errors appearing in the Complaint. Plaintiff briefly mentions that this claim is brought pursuant to 42 U.S.C. § 1988, among other statutes, but then fails to include a cause of action under that section. *See* SAC ¶ 18. Accordingly, the Court does not consider it. For purposes of the present motions to dismiss, the Court also construes Counts 47–50 as against Westchester County. Read literally, the Complaint only pleads two causes of action against Westchester County, with four other claims pled twice against Mount Vernon. *See* ¶¶ 308–334, 379–414. County Defendants raise this issue in their Motion to Dismiss. ECF No. 62 ("County MTD") at. 1. But Plaintiff fails to address that error in his Opposition—and indeed urges the Court not to dismiss "Plaintiff's Complaints against the Mount Vernon Defendants." Opp. to County MTD at 13. For purposes of the present motions to dismiss and considering whether to grant leave to amend the SAC, the Court construes Counts 47–50 as though they were properly asserted against Westchester County.

I.   **Plaintiff Fails to Establish *Monell* Liability on Behalf of New Rochelle, Westchester County, or Mount Vernon**

Defendants argue that, to the extent Plaintiff has claimed *Monell* liability against Mount Vernon, New Rochelle, and Westchester County, the pleading fails on multiple fronts. *See* ECF No. 56 ("MV MTD") at 20–25; ECF No. 58 ("NR MTD") at 4–7; County MTD at 16–18. The Court reviews the applicable standard and then considers whether Plaintiff has sufficiently pled *Monell* liability against New Rochelle and Westchester County, first, and Mount Vernon second.

A claim for municipal liability under Section 1983 requires a plaintiff to plead three elements: "(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the

deprivation of a constitutional right." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020). A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (internal citations omitted); *see also Patterson v. County of Oneida*, 375 F.3d 206, 226–27 (2d Cir. 2004) (describing methods of establishing Monell liability). When a plaintiff sues a municipality under Section 1983, it is not enough for him to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of his rights. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under . . . section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)). Nonetheless, "[u]nlike municipal liability for claims arising under Section 1983, New York State law permits municipalities to be held liable for false arrest committed by their employees under the doctrine of respondeat superior." *Harley v. The City of New York*, No. 14-CV-5452 (PKC), 2016 WL 552477, at *6 (E.D.N.Y. Feb. 10, 2016) (citing *L.B. v. Town of Chester*, 232 F. Supp. 2d 227, 239 (S.D.N.Y. 2002)). Thus, the analysis that follows does not implicate Plaintiff's claims for false arrest under New York State law.

### A. Westchester County and New Rochelle *Monell* Liability

Here, Plaintiff pleads no facts to support the existence of a policy, practice, or custom—or, alternatively, an act of a final decisionmaker—in Westchester County or New Rochelle that led to the constitutional violations he is alleged to have endured. Typically, a "single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Aragon v. New York*, No. 14-CV-9797 (ER), 2017 WL 2703562, at *6 (S.D.N.Y. June 22, 2017) (quoting *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)); *see also Jones v. Town of East Haven*, 691 F.3d 72, 80–81 (2d Cir. 2012). The pleadings make clear that the claims against New Rochelle and Westchester County are based on, respectively, a BOLO alert that New Rochelle Defendants may have issued and the Westchester Officers' involvement in stopping, detaining, and searching Mr. Smith and his car on one occasion. As John Does, the Westchester Officers are not alleged to have policy-making authority, nor are the New Rochelle John Does who may have issued the BOLO alert.

In opposition to this point, Plaintiff reiterates his conclusory language that Defendants "adhere to a custom or policy of engaging in . . . (or enlisting other police agencies to engage in) constitutionally violative traffic stops, based on patently false information." ECF No. 63 ("Opp. to NR MTD") at 10; *see also* Opp. to County MTD at 12 ("The Westchester Defendants adhere to a custom or policy of engaging in constitutional violative traffic stops in concert with or at the request of Mount Vernon . . . ."); SAC ¶¶ 103, 109, 114 (discussing New Rochelle's "custom or policy of issuing alerts to other departments without verifying the information being disseminated"); SAC ¶¶ 390, 396, 402 (alleging a County "custom or policy of aiding other departments in unlawful traffic stops; unlawful detentions, and unlawful searches, without verifying that the stops, detentions, and/or searches are proper"). But "boilerplate statements that

8

county employees were acting in accord with a municipal policy, with no facts to support those statements, are not sufficient to support a *Monell* claim." *Thomas v. Town of Lloyd*, No. 21-CV-1358 (DNH), 2024 WL 118939, at *10 (N.D.N.Y. Jan. 11, 2024) (internal citation omitted).

To the extent that Plaintiff's *Monell* theory for the County rests solely on its association with Mount Vernon, such an argument is unavailing. Plaintiff alleges that the County Defendants had constructive knowledge of a constitutionally violative pattern or practice conducted by the Mount Vernon Police Department but continued to act "in concert with Mount Vernon without verifying the basis for the traffic stops / detentions." Opp. to County MTD at 12. In his pleadings, however, Plaintiff fails to allege any facts, other than broad statements, to support this conclusory allegation. As such, the SAC fails to provide any basis for the Court to infer that there is a practice of the two Departments working in concert to engage in unconstitutional traffic stops and detentions.

At most, Plaintiff has described a single encounter by street-level officers from New Rochelle and Westchester County. These allegations cannot establish a broader policy or pattern, and thus Plaintiff's Section 1983 claims against New Rochelle and Westchester County cannot sustain. Accordingly, the Court dismisses Counts 6–8 and 46–48 of the SAC.

The failure to adequately plead a municipal policy or custom under *Monell* dooms claims against municipalities under 42 U.S.C. § 1985 and 42 U.S.C. § 1986. *Brown v. City of New York*, 306 F. Supp. 2d 473, 478 (S.D.N.Y. 2004); *White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010) (explaining that Section 1986 claims require stating a claim under Section 1985). Here, Plaintiff does not allege any additional facts giving rise to municipal liability as part of his Section 1985 claims. Accordingly, the same *Monell* analysis described above applies here, and the Court dismisses Counts 49 and 50.

Plaintiff's failure to adequately plead a municipal policy or custom also implicates his official-capacity suits against individual officers. Because official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent," *see Monell*, 436 U.S. at 690 n.55, sustaining a cause of action against the officers in their official capacities also requires a finding of *Monell* liability. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[I]n an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." (citations omitted)). Consequently Counts 2–4 against the New Rochelle Officers and Counts 40–44 against the Westchester Officers must be dismissed to the extent they are alleged against the John Does in their official capacities.

### B. Mount Vernon *Monell* Liability

For the Mount Vernon Defendants, Plaintiff relies on a report (the "Report") released by the Department of Justice ("DOJ") on December 12, 2024, which found that the Mount Vernon Police Department engaged in "a pattern and practice of unlawful conduct" and "identified serious concerns with MVPD's practice regarding vehicle stops and evidence collection." *Justice Department Finds Civil Rights Violations by the Mount Vernon, New York, Police Department*, U.S. Dep't of Just. Archives (Dec. 12, 2024), https://www.justice.gov/archives/opa/pr/justice-department-finds-civil-rights-violations-mount-vernon-new-york-police-department; *see* SAC ¶¶ 35–41. The Report was based on a years-long investigation conducted by the Civil Rights Division's Special Litigation Section and the U.S. Attorney's Office for the Southern District of New York. *Id.* Because the DOJ has since "retracted" the Report, however, Defendants argue that the Report "should be afforded no evidentiary weight." MV MTD at 2, 20; *see also The U.S. Department of Justice's Civil Rights Division Dismisses Biden-Era Police Investigations and Proposed Police Consent Decrees in Louisville and Minneapolis*, U.S. Dep't of Just. Off. of Pub.

10

Aff. (May 21, 2025), https://www.justice.gov/opa/pr/us-department-justices-civil-rights-division-dismisses-biden-era-police-investigations-and ("Retraction") ("retracting the Biden administration's findings of constitutional violations on the part of" the MVPD).

The Court finds Defendants' argument unavailing. Courts in this District frequently find that DOJ reports alone suffice to establish a policy or custom on a motion to dismiss. *See, e.g.*, *Kucharczyk v. Westchester Cnty.*, 95 F. Supp. 3d 529, 544 (S.D.N.Y. 2015) ("Here, the DOJ Report appended to Plaintiff's Complaint is sufficient to allege a widespread practice . . . of which policymakers were aware."); *Bektic-Marrero v. Goldberg*, 850 F. Supp. 2d 418, 431 (S.D.N.Y. 2012) (finding that a DOJ report whose preliminary findings were shared before the action's underlying events sufficiently alleged "a 'custom' of repeated constitutional violations, which were sufficiently pervasive as to suggest acquiescence on the part of the County's policymakers"). Recently, two courts have also credited DOJ reports that were published and then redacted after a political change in administration. *See Anderson v. City of Mount Vernon*, No. 23-CV-3963 (NSR), 2025 WL 2773144 (S.D.N.Y. Sept. 29, 2025); *Hodge v. City of Mount Vernon*, No. 25-CV-2736 (JGLC), 2026 WL 637092 (S.D.N.Y. Mar. 6, 2026). Those courts recognized that "the factual evidence referenced in the DOJ's report—including officer interviews and internal admissions—may still prove relevant, even if the agency has withdrawn its legal conclusions." *Hodge*, 2026 WL 637092, at *10 (quoting *Anderson v. City of Mount Vernon*, 2025 WL 2773144, at *7).

Nonetheless, the Court determines that the Report does not support *Monell* liability here. "[T]he operative inquiry at this stage is . . . whether Plaintiff has sufficiently alleged a policy or practice that is widespread and *of which policymakers must have been aware*." *Kucharczyk v. Westchester Cnty.*, 95 F. Supp. 3d 529, 545 (S.D.N.Y. 2015) (emphasis added). The incident at

issue here occurred on August 24, 2023—one-and-a-half years before the DOJ Report was issued. Although the DOJ Report indicates that the investigation began on December 3, 2021, neither the Report nor the Complaint alleges facts that would have put Mount Vernon on notice of unconstitutional vehicle stop practices by August 2023. Because the Report furnishes the entire basis for *Monell* liability against Mount Vernon in the Complaint, the Court finds it absent here. Accordingly, the Court dismisses Counts 9–32 to the extent they are alleged against Defendants in their official capacities and Counts 34–38.

Plaintiff also fails to properly allege *Monell* liability against Mount Vernon under Sections 1985 and 1986 for additional reasons. These claims require allegations of "racial or . . . otherwise class-based, invidious discriminatory animus," along with the requirements cited above for *Monell* liability. *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007)); *see also Brown*, 306 F. Supp. 2d at 478 ("[T]here can be no liability against the City under § 1985 absent a municipal policy, custom or practice." (citations omitted)); *White*, 369 F. App'x at 226 (explaining that Section 1986 claims require stating a claim under Section 1985). In his briefing, Plaintiff states that the Report found that the MVPD "disproportionately targets Black people for arrest." Opp. to MV MTD at 13. However, Plaintiff failed to allege anything regarding his own race, municipal race-based practices, or personal or other features related to any other protected characteristics in the SAC. Thus, Plaintiff failed to allege a causal link between a municipal custom or practice and a violation of Section 1985. Because Plaintiff's Section 1985 claim fails, so, too, does his Section 1986 claim. Consequently, the Court dismisses Counts 43 and 44.

II.   **Claims Against Officer Bovell in His Personal Capacity Have Been Abandoned, and Claims Against Him in His Official Capacity Are Dismissed as Duplicative**

The Mount Vernon Defendants argue that Plaintiff failed to substitute a proper party after they filed a Notice of Suggestion of Death for Officer Bovell pursuant to Federal Rule of Civil Procedure 25. MV MTD at 8–9; *see also* ECF No. 9. Because Plaintiff failed to respond to this argument in his Opposition or request any extension to file a substitution motion, the Mount Vernon Defendants argue that the claims against Officer Bovell should be deemed abandoned. *See* MV Reply at 1.

Defendants' argument is partially correct. The Federal Rules generally do not permit discretion regarding the timing of party substitution, requiring that "[i]f the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed." Fed. R. Civ. P. 25(a)(1); *cf. Ortiz v. Orange Cnty., New York*, No. 23-CV-2802 (VB), 2025 WL 3022861, at *1 (S.D.N.Y. Oct. 29, 2025) ("Rule 25 gives courts flexibility to tailor the *type of dismissal* to the facts of the case." (citation omitted) (emphasis added)). Even if the Court had been inclined to *sua sponte* extend Plaintiff's time to file a substitution motion, Plaintiff's failure to reply to these arguments evinces an intent to abandon those claims. *See, e.g., Felix v. City of New York*, 344 F. Supp. 3d 644, 654 (S.D.N.Y. 2018) ("Courts may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (cleaned up)). Without a party substitution, Mr. Smith's claims against Officer Bovell in his individual capacity are extinguished. *See, e.g., Young v. Patrice*, 832 F. Supp. 721, 723 (S.D.N.Y. 1993) (explaining that Rule 25(a)(1) governs suits against officials in their personal capacities and Rule 25(d)(1) governs the same for official-capacity suits).

However, Plaintiff sued Officer Bovell in both his official and individual capacities. SAC ¶ 11. Rule 25(d) provides that, where a public officer is sued in his official capacity, the

13

"officer's successor is *automatically substituted* as a party." Fed. R. Civ. P. 25(d) (emphasis added). That successor here is Mount Vernon. *See Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007) ("An official capacity suit against a public servant is treated as one against the governmental entity itself." (citing *Monell*, 436 U.S. at 690 n.55; *Kentucky v. Graham*, 473 U.S. 159, 169 (1985))). Because the Court has already dismissed official-capacity claims against Officer Bovell, the Court dismisses Counts 21–26 against Officer Bovell in both his individual and official capacity.

## III. The New Rochelle Defendants Are Dismissed

According to the New Rochelle Defendants, the SAC does not allege that they took part in Plaintiff's stop, detention, or car search, because the New Rochelle Officers were not present at the scene and a police supervisor advised Plaintiff that they did not put out an alert about him. *See* NR MTD at 4–9. However, Plaintiff contends that he pleads two alternative theories of the underlying events—that the New Rochelle Officers provided materially false information by issuing an alert for Plaintiff and, in doing so, caused Plaintiff's arrest, search, and property damage; or, alternatively, that the New Vernon and County Officers fabricated an alert from New Rochelle as pretext to detain Plaintiff. *See* Opp to NR MTD. Because the alert forms the basis of the New Rochelle Defendants' purported liability in this action, the Court considers the New Rochelle Defendants' liability under the first theory.

### A. The Court Permits Plaintiff to Plead Alternative Theories Regarding the Existence of An Alert

The Court permits Plaintiff to plead alternative theories about whether New Rochelle in fact issued a BOLO alert for his detention. Rule 8 permits a party to "state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). To survive a motion to dismiss, the party need only be successful on any one of the alternate theories. Fed. R.

14

Civ. P. 8(d)(2). The Second Circuit has clearly stated that an "inconsistency may lie either in the statement of the facts or the legal theories adopted." *Henry v. Daytop Vill., Inc.*, 42 F.3d 89, 95 (2d Cir. 1994) (citation omitted). The flexibility to plead two statements of a claim "is especially appropriate in civil rights cases, in which complex inquiries into the parties' intent may sometimes justify raising multiple, inconsistent claims." *Id*. Consequently, flexibility is also particularly appropriate where a plaintiff lacks superior knowledge about an issue. *Cf. In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 407 (S.D.N.Y. 2001).

Here, Plaintiff has met this standard. The existence (or lack thereof) of an alert serves as a factual predicate for claims against different defendants, and Plaintiff's limited knowledge as to the other parties' intent at this stage in the proceedings warrants a generous construction of these allegations as alternative pleadings. Thus, the Court exercises its discretion at the motion to dismiss stage, drawing all inferences in favor of the nonmoving party, to construe separate allegations in the Complaint as alternative theories. *See Ajinomoto Co. v. CJ CheilJedang Corp.*, No. 16-CV-03498 (MKV), 2021 WL 4430200, at *4 (S.D.N.Y. Sept. 27, 2021) (citing *Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir. 1999)).

### B. Even Accepting Alternative Pleadings Regarding the Alarm, the Counts Against the New Rochelle Defendants Do Not Survive a Motion to Dismiss

Plaintiff's claims against the New Rochelle Defendants cannot survive under either alternate theory, however. The New Rochelle Defendants argue that Plaintiff's false arrest, unlawful search, and deprivation of property claims must fail because no New Rochelle Officers are alleged to have directly participated in Plaintiff's stop, detention, or arrest, or in the search of his car. *See* NR MTD at 7–8. Plaintiff contends that putting out an alert directing other police departments to "stop, detain, and search Plaintiff" constitutes personal involvement. Opp. to NR MTD at 7.

15

Plaintiff fails to provide a case citation holding a non-arresting police department liable for false arrest or unlawful search as the result of a BOLO alert. He further fails to plead any fact or basis in knowledge to suggest that any particular New Rochelle officer fabricated an alert about him. Accordingly, the Court cannot find personal involvement in this situation. There is also a further independent basis to find that the New Rochelle Defendants are not liable for the search or deprivation of property. Plaintiff's claim that the search was conducted "at the request of and direction of New Rochelle," Opp. to NR MTD at 9, is directly controverted by the Complaint. The SAC states that the New Rochelle BOLO alert directed *detention*. SAC ¶ 55. One police department's generalized BOLO alert does not direct another police department to search a driver's entire car and trunk. The deprivation of property described in the SAC follows specifically from the trunk search, which required separate probable cause that could not be furnished by a generalized BOLO alert. *See infra* section IV.B. As such, any decision to search Mr. Smith's trunk belonged to the officers on the scene and is not the direct result of the BOLO alert. The Court thus dismisses all Counts against the New Rochelle Defendants (i.e., Counts 1–8).

## IV.    The Remaining False Arrest and Unlawful Search Claims Survive

The Court now turns to Plaintiff's claims for false arrest and unlawful search pursuant to New York state law and Section 1983. The Court initially evaluates the false arrest claims as to the Mount Vernon and County Defendants, and then it does the same for the unlawful search claims. Finally, it considers whether qualified immunity or impermissible group pleading shields Defendants from liability.

16

### A. The False Arrest Claims Survive Against the Mount Vernon and County Defendants

To state a Section 1983 false arrest claim, a plaintiff must allege that "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (per curiam) (internal quotation marks omitted). "Probable cause is a complete defense to an action for false arrest, whether that action is brought under New York state law or under § 1983." *Drayton v. Young*, No. 17-CV-5440 (KMK), 2018 WL 5831324, at *4 (S.D.N.Y. Nov. 7, 2018) (citing *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015)). Because a Section 1983 claim for false arrest "is substantially the same as a claim for false arrest under New York law," *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted), the Court analyzes both claims together.

The Mount Vernon and County Defendants argue that Plaintiff's claims for false arrest and unlawful search must fail because the SAC alleges facts that establish probable cause. MV MTD at 9; County MTD at 10–11. In support of probable cause, the Mount Vernon and County Defendants also cite to portions of Plaintiff's examination pursuant to New York General Municipal Law § 50-h, wherein Plaintiff admitted to having tinted windows and recalled a Mount Vernon officer telling him he was alleged to have fled a traffic stop, been involved in a shooting, and been a member of a gang. MV MTD at 4–5; County MTD at 11; MV Reply at 2, 4; ECF No. 68 ("County Reply") at 3. The Court construes Plaintiff's claims against the Mount Vernon and County Defendants to proceed under a theory that there was no BOLO alert issued by New Rochelle, *see supra*, and that the warrant in Queens was a fabrication. Plaintiff provides factual allegations in support of those claims. *See* SAC ¶¶ 52, 54, 59–60, 63.

17

At this juncture, the Court declines to consider testimony from Plaintiff's 50-h hearings. Even though the Court may consider materials "incorporated by reference" in the Complaint, *DiFolco,* 622 F.3d at 111, the 50-h transcripts here do not rise to that level. Other courts in this District routinely decline to consider 50-h testimony where the plaintiff did not attach the transcript or otherwise incorporate it by reference in the complaint. *See Est. of Sauickie by Orr v. City of New York*, No. 17-CV-2662 (ER), 2018 WL 3222534, at *2 (S.D.N.Y. July 2, 2018) ("[C]ourts in this circuit typically decline to consider 50-h testimony submitted by defendants when ruling on a Rule 12(b)(6) motion."); *Prevost v. City of New York*, No. 13-CV-3760 (VEC), 2014 WL 6907560, at *2–*3 (S.D.N.Y. Dec. 9, 2014) ("District courts in this circuit regularly decline to consider 50–h Transcripts submitted in support of or in opposition to a motion to dismiss, even if neither party objects."). Merely referencing a 50-h hearing in the complaint does not suffice to incorporate it by reference. *See, e.g.*, *Beck v. City of New York*, No 12–CV–9231 (RA), 2014 WL 80544, at *3 n.4 (S.D.N.Y. Jan. 3, 2014). Here, the SAC does not utilize any substantive testimony from the hearings; rather, it only indicates that they took place as required by state law. *See* SAC ¶¶ 31–32. Accordingly, the Court relies solely on the facts alleged by Plaintiff in the SAC to conduct its analysis.

The Court bases its analysis on the following allegations: Officer Housen told Mr. Smith that New Rochelle Officers had issued a BOLO alert to detain him because he fled a traffic stop earlier in the day. SAC ¶ 55. But, as he informed the Officers, Mr. Smith had neither been pulled over nor fled a traffic stop earlier that day. SAC ¶ 56. Officer Housen also wrote Plaintiff a ticket for tinted windows before letting him go. SAC ¶ 60. The SAC contains no allegations about gang membership or involvement in a shooting. Rather, it indicates that Mr. Smith did not have any

warrants for his arrest, despite Officer Housen advising him of an active warrant in Queens. SAC ¶¶ 52, 59.

The Court notes that, although the SAC lacks allegations affirming or denying the window tints, the issue of whether probable cause for arrest existed here is a fact-intensive inquiry not suitable to a motion to dismiss. "Probable cause to arrest exists when the officers have reasonably trustworthy information as to facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Ackerson*, 702 F.3d at 19 (cleaned up). "In deciding whether probable cause existed for an arrest, [courts] assess whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Id.* (internal citation and quotation marks omitted). A "finding of probable cause turns on the particularities of each case and the unique circumstances confronting an officer at the time the seizure occurred." *Kaplan v. Cnty. of Orange*, 528 F. Supp. 3d 141, 164 (S.D.N.Y. 2021). And while probable cause "may be determined 'as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers,'" it is "generally a fact-intensive question" improper for resolution on a motion to dismiss. *Lopez v. City of New York*, No. 24-CV-6281 (ARR), 2025 WL 2959059, at *5 (E.D.N.Y. Oct. 17, 2025) (quoting *Barkai v. Mendez*, 629 F. Supp. 3d 166, 191 (S.D.N.Y. 2022)).

New York law prohibits drivers from operating a car with excessively tinted windows. N.Y. Veh. & Traf. Law ("VTL") § 375(12-a). "Courts in New York and in this Circuit have found that officers have probable cause to arrest an individual for excessively tinted windows when they reasonably believe that the windows are excessively tinted and provide facts on which that conclusion is based." *Caraballo v. City of New York*, 726 F. Supp. 3d 140, 162 (E.D.N.Y. 2024), *on reconsideration in part sub nom. Caraballo v. Surriga*, No. 21-CV-285 (ARR) (VMS), 2024

WL 2701644 (E.D.N.Y. May 24, 2024) (citing *People v. Biggs*, 175 N.Y.S.3d 117, 121 (2d Dep't 2022)); *see also Scott v. City of New York*, No. 19-CV-6289 (JPO), 2022 WL 846929, at *3 (S.D.N.Y. Mar. 22, 2022); *Djangmah v. Falcione*, No. 08-CV-4027 (PAC) (FM), 2013 WL 208914, at *11 (S.D.N.Y. Jan. 18, 2013), *report and recommendation adopted*, 2013 WL 1195261 (S.D.N.Y. Mar. 25, 2013)); *see also* VTL § 155.

The SAC does not demonstrate that the arresting Officers reasonably believed that the windows were excessively tinted. The New York Court of Appeals has established a test as to "whether the police officer reasonably believes the windows to be over-tinted." *See Biggs*, 175 N.Y.S. 3d at 121. Nowhere in the pleadings are there any allegations about the type or extent of any window tint, or whether it was reasonable for the officers to believe that the windows were excessively tinted. These matters are factual disputes that are inappropriate for resolution at this stage.

The Court similarly finds unavailing Defendants' arguments that "[t]he face of the [SAC] itself establishes . . . probable cause" because of an alleged traffic stop earlier in the day. County MTD at 13. The SAC denies that Mr. Smith ever fled a traffic stop, and it does not allege that the stopping or detaining Officers believed he had done so at the relevant times. Indeed, one of Plaintiff's theories is that the Officers came up with *post hoc* justifications for an unlawful stop and seizure. *See* SAC ¶ 54 (explaining that Mount Vernon Officers told Mr. Smith to "wait while they figured out what he would be arrested for"). The SAC is consistent with a theory that no probable cause existed when the Officers stopped and detained Mr. Smith. Consequently, probable cause does not defeat Plaintiff's claims for false arrest as a matter of law.

20

**B.  The Unlawful Search Claims Survive Against the Mount Vernon and County Defendants**

The Mount Vernon and County Defendants spend much less time in their pleadings on Plaintiff's unlawful search allegations. Indeed, in discussing probable cause, the County Defendants' Reply specifically only alleges that the SAC establishes probable cause to "initiate the traffic stop and temporarily detain Plaintiff." County Reply at 3.

The Fourth Amendment prohibits unreasonable searches. *See Carpenter v. United States*, 585 U.S. 296, 303 (2018). Warrantless searches are "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *United States v. Weaver*, 9 F.4th 129, 138 (2d Cir. 2021) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). Defendants' invocations of probable cause sound in the automobile exception, wherein law enforcement "may conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime." *United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir. 2004). But Defendants do not argue it in their motions to dismiss, and the Court does not find it applies here. No allegations in the SAC, including what Plaintiff alleges Officers told him, give rise to an inference that his vehicle contained evidence of a crime. Similarly, although not raised in Defendants' briefings, neither the car nor trunk search constituted a valid search incident to arrest as a matter of law. Under that exception, "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *New York v. Belton*, 453 U.S. 454, 460 (1981). But a trunk falls outside the auspices of a proper search incident to arrest, see *id.* at 460 n.4, and here, with all inferences taken favorably to Plaintiff, the SAC does not establish probable cause for a lawful

21

arrest. Accordingly, no exception to the warrant requirement excuses Defendants' warrantless search of Plaintiff's car as a matter of law.

### C.  Qualified Immunity Does Not Apply at This Stage

The Mount Vernon Defendants argue that, even absent probable cause, the Mount Vernon Officers are entitled to qualified immunity because they objectively and reasonably believed their actions against Mr. Smith to be lawful. MV MTD at 13. Plaintiff disagrees with Defendants' characterization of the Officers' actions, arguing that no objective reasonable belief of probable cause could exist in this case where no BOLO alert existed. Opp. to MV MTD at 10.

Qualified immunity, an affirmative defense, "shields officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jackler v. Byrne*, 658 F.3d 225, 242 (2d Cir. 2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

> An officer who acts without probable cause is entitled to qualified immunity from a suit for false arrest if he can show that there was "at least arguable probable cause," which "exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."

*Tsesarskaya v. City of New York*, 843 F. Supp. 2d 446, 458 (S.D.N.Y. 2012) (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)).

The Court finds that at this juncture, taking all inferences in favor of Plaintiff, qualified immunity has not been established as a matter of law. Specifically at issue is whether the County and Mount Vernon Officers had arguable probable cause to detain Plaintiff for an hour and search his car and trunk, based on the tinted windows, BOLO alert, and Queens warrant. The SAC, however, alleges that two of these bases were either false or fabricated and fails to make any

substantive allegations about the third. In light of these factual disputes, the Court cannot ascertain whether arguable probable cause existed. *Caraballo*, 726 F. Supp. 3d at 162.

### D. Plaintiff's Claims Are Not Defeated Through Group Pleading

Defendants argue that claims against the individual Defendants should be dismissed because Plaintiff fails to plead their individual personal involvement and thus does not meet the requirements of Federal Rules of Civil Procedure 8 and 12. MV MTD at 5–7; County MTD at 7–9; *see also* NR MTD at 6 ("[T]he SAC fails to allege any personal involvement of any New Rochelle Officers.").

The Court finds Plaintiff meets minimum pleading standards. "The key to Rule 8(a)'s requirements is whether adequate notice is given," which "will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial." *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004) (citation omitted). Here, Plaintiff "satisfies the requirements of Rule 8(a) because it gives [Defendants] fair notice of the basis for [Plaintiff's] claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). "And it does so even though it includes certain allegations against 'Defendants' collectively." *Ritchie v. N. Leasing Sys., Inc.,* 14 F. Supp. 3d 229, 237 (S.D.N.Y. 2014). This case involves one underlying event. As part of that event, Plaintiff maintains that "[e]ach of those officers participated in the drawing of their weapons and ordering Plaintiff to exit his vehicle." Opp. to County MTD at 6. Plaintiff also points out that, because he was restrained in the back of a vehicle during the car search, "Plaintiff's inability to identify the exact offender . . . is due entirely to Defendants' own unlawful conduct." Opp. to MV MTD at 12. The Court agrees with Plaintiff in finding that fact has not negatively impacted Defendants' fair notice as to the claims brought against them.

**V.      The Deprivation of Property Claims Fail**

Plaintiff's deprivation of property claims under the Fifth Amendment are unsuccessful because "[t]he Fifth Amendment's Due Process Clause protects citizens against only federal government actors, not State officials." *Mitchell v. Home*, 377 F. Supp. 2d 361, 372 (S.D.N.Y. 2005) (citing *Dusenbery v. United States*, 534 U.S. 161, 167 (2002)). The Fourteenth Amendment, on the other hand, exclusively provides the due process rights that a plaintiff enjoys against state government officials. *Id.* at 372–73. Here, Plaintiff only asserts claims against municipalities, a county, and their agents, and accordingly lacks the federal defendants needed to bring a claim under the Fifth Amendment Due Process Clause. Although the Mount Vernon Defendants also brief a property deprivation claim under the Takings Clause, *see* MV MTD at 15, the Court finds no indication that Plaintiff intended to pursue such a theory. The SAC does not reference a Takings theory and his Opposition appears to disclaim one. Opp. to MV MTD at 11 ("This may not have been a 'taking' of the property . . . ."). The Opposition also cites no case law pursuing a Takings claim.

The Court thus turns to Plaintiff's deprivation of property claims under the Fourteenth Amendment. The Mount Vernon Defendants argue that Plaintiff's Fourteenth Amendment Claim should fail because he has not sufficiently availed himself of the remedies available under state law, as the law requires. *See* MV MTD at 15–16. They also argue that spilling gasoline does not amount to the type of action recognized as depriving a property interest under the Fourteenth Amendment. *See* MV MTD at 16–17. Plaintiff opposes the last point, arguing that the conduct here in ordering Plaintiff out of his vehicle at gunpoint was so egregious as to shock the conscious. Opp. to County MTD at 11. However, Defendants point out that the conduct underlying this claim involves the trunk search and gasoline spill, not the conduct leading up to

24

it. MV Reply at 5. Last, the Mount Vernon Defendants argue that the Fourteenth Amendment claims should be dismissed as duplicative of Plaintiff's Fourth Amendment claims. MV MTD at 17.

The Court agrees with Defendants. Here, Plaintiff does not have a substantive due process claim because "[s]ubstantive due process analysis is inappropriate where a claim is covered by the Fourth Amendment." *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005) (cleaned up) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998)). Accordingly, to the extent they have not been previously dismissed by the foregoing, the Court dismisses Counts 4, 8, 12, 18, 24, 30, 36, 42, and 48 for failure to state a claim.

## VI.    The Conspiracy Claims Fail

To state a cause of action under § 1985(3), a plaintiff must allege

> 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (cleaned up). "The conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." *Id.* (internal quotations omitted). The Mount Vernon Defendants argue that Plaintiff fails to allege any concrete fact to support the existence of a conspiracy and that he fails to properly allege membership in a protected class. MV MTD at 18–19. In response, Plaintiff for the first time asserts that he is a Black man and that racial profiling was the "actual basis" for his stop. Opp. to County MTD at 10; Opp. to MV at 12–13.

Here, Plaintiff cannot survive a motion to dismiss by introducing new facts in opposition that are not pled in the SAC. *See, e.g.*, *Lederman v. Benepe*, No. 12-CV-6028 (PGG), 2016 WL

11588628, at *3 (S.D.N.Y. Mar. 11, 2016) (citing *Troy v. City of New York*, No. 13-CV-5082 (AJN), 2014 WL 4804479, at *1 (S.D.N.Y. Sept. 25, 2014)). Plaintiff failed to allege membership in a protected class in the SAC and thus cannot state a claim under Section 1985. Because the Court dismisses the conspiracy claims, so too must it dismiss the neglecting to prevent conspiracy claims. *See White*, 369 F. App'x at 226. Accordingly, to the extent they have not been previously dismissed by the foregoing, the Court dismisses Counts 13–14, 19–20, 25–26, 31–32, 37–38, 43–44, and 49–50.

## VII.    Punitive Damages Against the Municipalities and County of Westchester Cannot Be Sustained

Although the SAC requests punitive damages "as to all claims for relief," ¶ 416, punitive damages are not available against all Defendants in this case. Namely, "[p]unitive damages are not available from a municipality." *Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 309 (S.D.N.Y. 2001) (citing *Jefferson v. City of Tarrant*, 522 U.S. 75, 79 (1997)); *see also Dean v. Westchester Cnty. Dist. Attorney's Off.*, 119 F. Supp. 2d 424, 433 (S.D.N.Y. 2000) (extending the principle to counties). Nonetheless, punitive damages are available under Section 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Defendants only objected to Plaintiff's claim insofar as "governmental entities . . . are immune from claims for punitive damages." County MTD at 19; *see also* NR MTD at 9. Accordingly, the Court permits Plaintiff's claims for punitive damages to continue on his surviving claims against only the individual Defendants in their personal capacities, to the extent he is able to meet that standard at trial.

26

## VIII.   Leave to Amend Is *Sua Sponte* Denied

Defendants encourage the Court to dismiss the Complaint with prejudice, given "ample opportunity to cure the defects." MV MTD at 3. At no point did Plaintiff request leave to amend. Nonetheless, the Court considers whether granting leave to amend *sua sponte* would be appropriate here and finds that it would not be. The main basis for amendment appears to be adding allegations regarding Plaintiff's race, the lack of which doomed his conspiracy claims under Sections 1985 and 1986. *See supra* section VI.

Leave to amend is "within the sound discretion of the trial court" and shall be freely granted "when justice so requires." *Bay Harbour Mgmt., LLC v. Carothers*, 474 F. Supp. 2d 501, 502 (S.D.N.Y. 2007) (citing *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990)); Fed. R. Civ. P. 15(a)(2). "Amendments are generally favored because they tend to facilitate a proper decision on the merits." *Env't Sols. Assocs. Grp., LLC v. Conopoco, Inc.*, No. 20-CV-10699 (MKV), 2021 WL 2075586, at *1 (S.D.N.Y. May 24, 2021) (citation and internal quotation marks omitted). The Supreme Court has instructed, however, that leave should be denied upon a showing of "futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) (internal citation omitted).

In assessing futility, the Court finds that properly pled assertions indicating racial animus would not save the conspiracy claims from a future motion to dismiss. A Section 1985(3) claim requires Plaintiff to allege, among other things, a conspiracy. *Dolan*, 794 F. 3d at 296. "In order

27

to maintain an action under Section 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (internal quotation marks omitted). Here, the SAC "alleged no facts upon which it may be plausibly inferred that the defendants came to an agreement to violate [Plaintiff's] constitutional rights." *Green v. McLaughlin*, 480 F. App'x 44, 46 (2d Cir. 2012). Plaintiff offers no insight into how Defendants worked together or any individualized pleadings about the Defendants that suggests to the Court he can plausibly assert a meeting of the minds. Because a Section 1986 claim rises and falls with a Section 1985 claim, as explained above, a failure to rescue Plaintiff's Section 1985 claims has the same impact on those under Section 1986.

The instant motions to dismiss were not Plaintiff's first time seeing Defendants' arguments. Plaintiff filed his Second Amended Complaint in response to previous motions to dismiss from all Defendants. *See* ECF Nos. 24, 28, 32. In their prior briefing, Defendants identified Plaintiff's failure to (1) allege specific policies or customs that would give rise to *Monell* liability for the New Rochelle and County Defendants, ECF No. 26 at 10–11, ECF No. 33 at 17–20; (2) make sufficient race-based allegations, ECF No. 26 at 8 ("42 U.S.C. § 1985 requires Plaintiff to show a race-based conspiracy to violate his rights."), ECF No. 30 at 20 ("Plaintiff provides no facts whatsoever to support the allegation that he was stopped because of his race."); (3) substitute a successor for Officer Bovell, ECF No. 30 at 7–8; and (4) provide a basis for punitive damages against municipalities, ECF No. 26 at 13, ECF No. 33 at 21–22. Accordingly, after two previous opportunities to amend, the Court determines that further amendment of dismissed claims would be futile and accordingly dismisses with prejudice. *See Al-Qadaffi v. Servs. for the Underserved*, No. 13–CV–8193 (SUS), 2015 WL 585801, at *8

28

(S.D.N.Y. Jan. 30, 2015) (denying leave to amend where the plaintiff "has already had one chance to amend his Complaint, and there is still no indication that a valid claim might be stated if given a second chance"), *aff'd*, 632 Fed. App'x. 31 (2d Cir. 2016); *Bui v. Indus. Enters. of Am., Inc.*, 594 F. Supp. 2d 364, 373 (S.D.N.Y. 2009) (dismissing an amended complaint with prejudice where the plaintiff failed to cure the deficiencies identified in his initial complaint despite "being given ample opportunity to do so").

## CONCLUSION

For the foregoing reasons, Counts 1–8, 12–14, 18–26, 30–32, 34–38, 42–44, and 46–50 are dismissed with prejudice; Counts 9–11, 15–17, 27–29, and 39–41 are dismissed as to the individual defendants in their official capacities with prejudice; Counts 9–11, 15–17, 27–29, and 39–41 may continue as against the Mount Vernon and County Defendants in their individual capacities; and Counts 33 and 45 may continue against Mount Vernon and Westchester County. By **April 2, 2026**, the parties are directed to file a proposed Civil Case Management Plan and Scheduling Order, noting whether they believe an initial pretrial conference is necessary at this juncture. The Clerk of Court is respectfully directed to terminate ECF Nos. 54, 57, 59, and 60.

Dated: March 19, 2026
       White Plains, New York

SO ORDERED.

Jessica Clarke

JESSICA G. L. CLARKE
United States District Judge

29